JOHN F. LYNN, Executor under the last Will and Testament of Jacob A. Melvin, deceased,

*vs.*

HELEN CLINTON, RUSSELL CLINTON, JR., LOUIS CLINTON, JAMES CLINTON, HOWARD C. CLINTON, EDWIN CLINTON, RENA WOOD- RIDGE, MARGARET LICHFIELD, CLARA MCCABE, also known as CLARA WINBROW, THE HOME OF MERCIFUL REST, a corpora- tion of the State of Delaware, YOUNG MEN'S CHRISTIAN ASSO- CIATION, a corporation of the State of Delaware, HARVEY S. CLINTON, RUSSELL CLINTON, SR., DOROTHY M. CLINTON.

*New Castle, April 29, 1955.*

*Victor J. Colombo,* Wilmington, for plaintiff-executor.

*John S. Walker* and *Frank J. Miller,* Wilmington, for defendant, Dorothy M. Clinton.

*A. James Gallo* and *Howard Duane,* for defendants, Helen Clinton, Russell Clinton, Jr., Louis Clinton, James Clinton, Howard C. Clinton, Edwin Clinton, Rena Woodridge, Clara McCabe and Russell Clinton, Sr.

*William A. Worth, Jr.,* of Richards, Layton & Finger, Wilming- ton, for defendant, The Home of Merciful Rest.

*John T. Gallagher,* of Morris, Steel, Nichols & Arsht, Wilmington, for defendant, Young Men's Christian Association.

The defendant Harvey S. Clinton did not appear.

SEITZ, Chancellor: This is the decision after final hearing on the executor's complaint seeking instructions as to the proper construction of Item 16 of the will of Jacob A. Melvin, dated February 20, 1951. He died a childless widower April 15, 1953.

I summarize the provisions of his will. Items 1 and 2 are not here material. By Items 3 to 9 inclusive he made specific bequests of $1,200 each to his nephew's wife and to each of his nephew's children except Harvey S. Clinton. By Item 10 he left $500 to his niece by his sister Emma. By Item 11 he left the sum of $500 to his second cousin, Clara McCabe. By Items 12 and 13 he bequeathed $1,000 each to two charitable institutions. By Items 14 and 15 he devised two separate pieces of real estate to two friends for life and the remainder to Russell Clinton, Sr. (his nephew), and Harvey S. Clinton, his great-nephew.

The disputed Item 16 reads as follows:

"I give, bequeath and devise unto Dorothy M. Clinton, (wife of Harvey S. Clinton) all those four lots of land each lot of land with a dwelling house thereon erected, to her and her heirs and *assigns* forever—the said Houses are numbered as follows No. 1001 and 1003 Kirkwood Street and 1004 and 1006 Kirkwood Street in the City of Wilmington, New Castle County and State of Delaware; I also give and bequeath unto the said Dorothy M. Clinton, one-half of all my personal estate, consisting of cash in Bank and in the Wilmington Savings Fund Society and in the Artisans Savings Bank both in the City of Wilmington, Delaware, and I order and direct my executor to sell for the best price or prices of all my certificates of stock all of my bonds and all of my preferred stocks that I now own and that are in the Safe Deposit Box at the Equitable Trust Company, Wilmington, Delaware.

"This bequest and devise is made to the said Dorothy M. Clinton, for her many acts of kindness in the years that have gone by." [sic]

Item 17 is a residuary clause by which the testator first directs the executor to sell his real and personal property (with exceptions not now material) and then directs him to divide it into eight equal parts and to give one part to his nephew, Russell Clinton, Sr., one part, to Russell's wife and one part to each of six of their seven children (Russell, Jr., excepted). Finally the executor is given a blanket power of sale.

[1, 2] The sole question for determination under Item 16 is whether Dorothy M. Clinton was bequeathed thereunder one-half of all of the testator's personal estate or whether she was only granted one-half of that part of his personal estate which consisted of "cash in Bank and in the Wilmington Savings Fund Society and in the Artisans Savings Bank". Dorothy, of course, claims one-half of the entire personal estate while the residuary beneficiaries say she is entitled only to one-half of the money in the bank and savings accounts.

The will was executed February 20, 1951. The testator's assets at that date may be rather definitely identified and I conclude that we may fairly assume that he was aware of such assets and their approximate value. There appears to have been no substantial changes in the value of his total assets between the date the will was signed and the date of the appointment of an Orphans' Court guardian for him on August 13, 1952.

At the time his will was executed, the testator had about $76,000 worth of stocks, bonds and mortgages. He had about $9,000 in the Wilmington Savings Fund, about $7,000 in the Artisans Savings Bank and about $1,600 in bank in the Equitable Trust. At the date of his death the value of his assets had increased about $6,000. However, the amounts in the two savings accounts remained about the same, while the account at the Equitable Trust had been substantially reduced. However, a question arose as to whether the reduced figure was the proper one to use in view of the purpose for

which such disbursements were made. In order to avoid any question of ademption the attorneys for the residuary beneficiaries concede that for the purpose of applying Item 16, the Court may consider the amount in bank as the amount when the will was drawn, viz., $1,645.66. I shall act on this concession unless Harvey S. Clinton desires to appear and be heard hereon.

Aside from his personal property the testator owned nine parcels of real estate at all times here material. By his will six of these parcels were specifically devised. Four went to Dorothy Clinton under Item 16 and had a fair value of about $18,000. A half interest in the remainder of two others went to Dorothy's husband. His interest had a fair value of about $8,500. The remaining three were sold by the executor for the net amount of about $13,700 and this money forms a part of the residuary estate. The specific legacies aggregated $11,400.

Dorothy's counsel contends that she is entitled to one-half of the testator's entire personal estate and that the final expenses and specific legacies are to be paid from the other half thereof. Counsel for the residuary beneficiaries contend that the very manner in which such a construction would operate militates against it. If Dorothy's construction is correct she would take under the will assets having a fair value of about $65,000 out of a total estate of about $138,000. Her husband would also take property valued at $15,000.

Under the construction urged by the residuary beneficiaries she would still receive property with a fair value of about $26,000 while her husband would take property having a value of about $21,000. All computations are before funeral expenses and taxes.

The problem posed by the executor is caused by the language whereby the testator states that he gives Dorothy M. Clinton one-half of "all" of his personal estate, followed by the language "consisting of" cash in bank and two named savings banks, with a further direction in the same paragraph to the executor to sell all of his stocks and bonds to be found in a certain safe deposit box.

It is evident that the language of the will is susceptible of either of two constructions:

1. the testator by the use of the words "consisting of", etc., defined that part of the personal estate in which Dorothy Clinton was to share, or

2. by the use of the language "all my personal estate", coupled with the direction in the same paragraph to the testator to sell all of his stocks and bonds, the testator intended to encompass all of his personal estate and the language "consisting of" was merely a partial identification of such assets.

The will admittedly and obviously contains artless language. The language of the will and the surrounding circumstances show that the testator, an elderly man, had a great regard for Dorothy M. Clinton. While she was not a blood relation, she was the wife of one of his nephews. Yet, it must also be clear that the testator was treating her quite handsomely even under the construction urged by the residuary beneficiaries. Under this construction she would receive property worth in gross about $26,000. Also, under this view her husband receives a larger aggregate share than any of his brothers or sisters. It may also be noted that the will does not indicate any particular desire to discriminate against his relatives except as that might be implied from his desire to reward the faithful service of Dorothy. Nor was any evidence introduced which would affect this conclusion.

I further realize that all the factors discussed above are only surrounding circumstances and inferences to aid in ascertaining intention. However, where the language really could justify either construction, I must give it substantial weight. Indeed, I recognize that a judge could reach either construction and reasonably "justify" his conclusion.

Dorothy's attorneys say that the words "consisting of" merely describe and locate "all my personal estate". I cannot see how this can be so since he did not even mention, as part of the language of bequest, the largest and most valuable assets in his personal estate, *viz.*, stocks and bonds. And he had knowledge of their value. Dorothy's counsel next emphasize the language in the same item, and indeed in the same sentence, directing the executor to sell his stocks and bonds found in the safe deposit box. But this only goes to point

up the fact that he was aware of these other assets when he used language limiting the general language in the same paragraph. Dorothy's attorneys say that to accept the construction placed on Item 16 by the attorneys for the residuary beneficiaries is to create worse ambiguities than are resolved. This is so, they say, because it would render meaningless that portion of Item 16 directing the sale of stocks and bonds. I cannot agree. At best it merely points up the deplorable draftsmanship involved. The fact that the will contained three powers of sale, at least two of which appear to be duplications in part, only adds to the confusion and does not strike me as significant in ascertaining intent. Nor is the comma after "estate" particularly meaningful here. A reading of the entire will shows how infirm a footing would be created by reliance on punctuation.

It should be noted that we are not concerned with a possible partial intestacy. The two important English cases [1] cited by Dorothy's counsel fail to show a situation such as is here presented. They are based on the strong presumption against intestacy and/or on the less meaningful language employed to "qualify" the general language. Here we find very explicit qualifying language and no problem of intestacy. I recognize the force of these cases and agree with the results there reached. I feel, however, that the implementation of this testator's intention calls for a construction that gives restrictive effect to the words "consisting of" etc. In view of the entire language I cannot feel that the qualifying language should here be passed off as nothing more than an inadequate enumeration of his personal property, particularly where other such items are mentioned in the same paragraph. This will was drawn by a member of the bar.

Dorothy's counsel asks the Court to supply the words "stocks and bonds" between the reference to bank assets and the direction to sell in Item 16. In this way, they say, the Court will "elucidate" the already demonstrated intention of the testator. I cannot accept this approach since I am not persuaded that such an intention has been sufficiently demonstrated.

1. *Dean v. Gibson* (1866) 3 *Eq. Cases* 712; *King v. George* (1876) 4 *Ch. Div.* 435.

Dorothy's counsel next urge that if their construction of Item 16 be rejected, as I have concluded it should be, then the Court should find an equitable conversion into cash of the stocks and bonds in the safe deposit box, thus making it "cash in bank" for purposes of Item 16. I cannot accept this argument. First of all, the specific legacy in Item 16 is defined by the language of that Item as the "cash" in the banks. Also, the doctrine of equitable conversion is in aid of effecting intent. It therefore cannot be used where, as here, I have concluded that the particular intention has not been demonstrated to have existed.

I conclude that under that portion of Item 16 dealing with the testator's personal estate he bequeathed to Dorothy one-half of his cash in bank (agreed to be $1645.66) and one-half of his money in the two savings funds.

I believe my construction of the will renders it unnecessary to pass on the other questions posed by the executor.

Order on notice.